UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-22301-ALTONAGA/TORRES

JOHN DOE,

    Plaintiff,

v.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINE,

    Defendant.
_____/

## MOTION TO COMPEL ARBITRATION AND DISMISS

Defendant, Carnival Corporation, d/b/a Carnival Cruise Line, ("Carnival"), moves to compel arbitration and dismiss this matter.

## Introduction

Plaintiff was a Carnival Seafarer. All Carnival Seafarers sign a Seafarer Agreement that mandates arbitration for any dispute that arises out of the Seafarer's service on the vessel. Plaintiff is no exception. *See* Redacted Seafarer's Agreement, dated June 23, 2018, attached as Exhibit 1. This matter, therefore, must be arbitrated.

## Background

Plaintiff, a United States citizen, began working for Carnival, a Panamanian corporation, in 2000. Over each of the following seventeen years, Plaintiff completed at least one contract with Carnival. *See* Redacted Assignment History, attached as Exhibit 2. His last contract was signed on June 23, 2018, for work to be performed on the *Carnival Magic*. *See* Ex. 1.

CASE NO.: 1:21-CV-22301-ALTONAGA/TORRES

Four days after he signed the June 23 agreement, Plaintiff had to be disembarked for a medical emergency. *See* Ex. 2, p. 1. Plaintiff was able to return to the *Carnival Magic* on September 2. *See id.* Unfortunately, after almost three months back on board, Plaintiff reported that he was feeling chest pains, and he was medically disembarked again on November 25, 2018. He has not worked onboard for Carnival since that day. Plaintiff now brings various claims arising from and connected to his employment with Carnival after June 23, 2018. *See* ECF No. 1.[1] There are no claims, however, that Plaintiff's Seafarer's Agreement is unenforceable, invalid, or revocable.

### Seafarer's Agreement

Plaintiff's last executed Seafarer's Agreement has a few clauses related to this motion. Most important is Paragraph (9):

> Except for a wage dispute governed by CCL's Wage Grievance Policy and Procedure, any and all disputes, arising out of or in connection with this Agreement or Seafarer's service on the vessel, no matter how described, pleaded, or styled including but not limited to constitutional, statutory, common law, admiralty, personal injury, intentional tort, contract, equitable claims, claims of injury, medical and lodging benefits claims, inadequacy or improper care claims, or employment disputes, whether accruing prior to, during or after the execution of this Agreement, shall be resolved by final and binding arbitration on an individual basis. . . . The seat of the arbitration and the final hearing shall be either in London, England, Monaco, Panama City, Panama or Manila, Philippines whichever is closer to Seafarer's home country. . . .

All of Plaintiff's claims are covered by Paragraph (9). Each allegation "arises out of" Plaintiff's "service on the vessel." Thus, they must "be resolved by final and binding arbitration" in

---

[1] Count I — ADA discrimination; Count II — FMLA; Count III — FCRA Disability Discrimination; Count IV — Jones Act Negligence; Count V — Unseaworthiness; Count VI — Failure to Provide Maintenance and Cure

whichever of the four countries is closest to Plaintiff's home country. It does not matter whether his claims "accru[ed] prior to, during or after the execution" of the contract.

Plaintiff's medical leave on June 27, 2018, four days after he signed his last Seafarer's Agreement with Carnival, triggered an auto-termination clause in Paragraph (2): "This Agreement shall automatically terminate without notice immediately upon Seafarer's unscheduled disembarkation of the assigned vessel if Seafarer disembarks the vessel for any reason, including but not limited to unscheduled personal leave, illness or injury, for more than one full voyage."

However, when Plaintiff returned to work on September 2, Paragraph (3.K) resumed force to the terms of the Seafarer's Agreement that was signed on June 23:

> In the event Seafarer returns to work after this Agreement has automatically terminated pursuant to paragraph 2, then Seafarer's return to active duty shall be deemed to be the commencement of a new and separate Seafarer's Agreement under the same terms and conditions set forth herein and said terms will be in force and effect until such time as a new Seafarer's Agreement is executed.

Taken together, these clauses require Plaintiff's claims to be heard by an arbitrator even though he did not sign another Seafarer's Agreement upon returning onboard after his first medical disembarkation. In fact, Plaintiff implicitly concedes that the Seafarer's Agreement was in force at all times he was onboard. *See* [ECF No. 1, ¶ 49] ("Plaintiff's last contract with CARNIVAL ended on November 25, 2018.").

If, however, those clauses were insufficient to find arbitration is mandatory, a survival clause in Paragraph (14) requires that the arbitration agreement in Paragraph (9) governs regardless. ("The parties' agreement to arbitrate shall survive the termination of the Seafarer's Agreement and shall continue to apply in full force and effect and bind the parties as required herein.").

CASE NO.: 1:21-CV-22301-ALTONAGA/TORRES

## Memorandum of Law

Agreements to arbitrate are heavily favored and rigorously enforced by courts. *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). As a matter of law, any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 24. This is especially true in agreements affecting interstate and foreign commerce. *See Mitsubishi Motors Corp.*, 473 U.S. at 629.

Arbitration agreements are governed by the Federal Arbitration Act, 9 U.S.C. Section 1 et. seq. ("FAA") and by the Convention of the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. Section 201 (the "Convention"). The Convention governs here because this is an action relating to an international arbitration agreement under the laws and treaties of the United States. *See* 9 U.S.C. § 205 *and* 28 U.S.C. § 1441. Pursuant to the Convention, and as indicated by *Bautista v. Star Cruises*, this Court has federal subject matter jurisdiction to compel arbitration of Plaintiff's claims as required by the Seafarer's Agreement. *See* 396 F.3d 1289, 1294 (11th Cir. 2005) (citing 9 U.S.C. § 203) ("A case covered by the Convention confers federal subject matter jurisdiction upon a district court because such a case is 'deemed to arise under the laws and treaties of the United States.'").

Federal law strongly favors agreements to arbitrate, particularly in international commercial transactions. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Section 9 U.S.C. § 206 requires courts to compel arbitration in accordance with an agreement "at any place therein provided for, whether that place is within or without the United States." Whether to compel arbitration under the Convention is a "limited inquiry" consisting of a determination of four

jurisdictional prerequisites to arbitration: (1) whether there is an agreement in writing to arbitrate; (2) whether the agreement provides for arbitration in the territory of a signatory of the Convention; (3) whether the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) whether a party to the agreement is not an American citizen **_or_** the relationship otherwise "envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." *See Bautista*, 396 F.3d at 1294 n.7 (citation omitted), *cited in Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1272 n.10 (11th Cir. 2011); *accord Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339–40 (5th Cir. 2004). If these prerequisites are met, a court must compel arbitration unless one of the Convention's affirmative defenses applies. *See Bautista*, 396 F.3d at 1294–95 (citations omitted).

All four jurisdictional requirements are met here. First, there is an agreement in writing to arbitrate. *See* Ex. 1. Second, the agreement provides for arbitration in the territory of a signatory of the Convention, as all four countries (United Kingdom, Monaco, Panama, and The Philippines) referenced in Paragraph (9) are signatories.[2] Third, the agreement relates to a commercial relationship (i.e., employment). *See Leighton v. Royal Caribbean Cruises Ltd.*, Case No. 1:16-cv-20507-KMM, 2016 WL 1321417, *2 (S.D. Fla. Apr. 5, 2016) ("There is no dispute among the parties that the first three jurisdictional requirements are met."). And although Plaintiff is an American citizen with respect to the fourth requirement, the overwhelming majority of his work occurred abroad, in international and foreign waters and at foreign ports of call, all while on a foreign-flagged vessel.

---

[2] New York Arbitration Convention, *Contracting States*, https://www.newyorkconvention.org/countries (last visited Aug. 15, 2021).

Courts routinely compel arbitration against United States citizens who work as crewmembers for cruise ships sailing internationally because their work is performed abroad. *See Alberts v. Royal Caribbean Cruises, Ltd.*, Case No. 1:15-cv-22207-KMM, 2015 WL 12977445, *4 (S.D. Fla. Sep. 14, 2015), *aff'd*, 834 F.3d 1202 (11th Cir. 2016); *Leighton*, 2016 WL 1321417 at *4–5 (United States permanent resident) (Moore, C.J.); *D'Cruz v. NCL (Bahamas) Ltd.*, No. 1:15-cv-20240, 2015 WL 1468327, *1 (S.D. Fla. Mar. 30, 2015) (King, J.), *aff'd*, 668 F. App'x 861 (11th Cir. 2016); *Rutledge v. NCL (Bahamas) Ltd.*, No. 14-23682-CIV, 2015 WL 458133, *2–3 (S.D. Fla. Feb. 3, 2015) (Moreno, J.); *see also Marino v. Royal Caribbean Cruises, Ltd.*, Civil Action No. 3:19-CV-00082, 2019 WL 7842573, *5–6 (S.D. Tex. Dec. 23, 2019); *Johnson v. NCL (Bahamas) Ltd.*, 163 F. Supp. 3d 338, 361 (E.D. La. 2016) (each case compelling arbitration under the Convention against a United States permanent resident or citizen).

Here, the majority of Plaintiff's work occurred abroad. *See Alberts v. Royal Caribbean Cruises, Ltd.*, 834 F.3d 1202, 1204 (11th Cir. 2016) ("We conclude that performance abroad includes a seaman's work traveling to or from a foreign country."); *see also D'Cruz*, 2015 WL 1468327 at *1 (rejecting seaman's argument that abroad means within a foreign state or on foreign soil because "[i]f the legislature wished to limit the applicability of the Convention to those instances where the relationship envisaged performance in foreign states, it knew how to do so."); *accord Johnson*, 163 F. Supp. 3d at 360–61. Approximately 75–85% of Plaintiff's work was performed outside of United States territory during Plaintiff's last Seafarer's Agreement with Carnival. *See* Exhibit 2 (showing Plaintiff was a crewmember only on the *Carnival Magic* after June 23, 2018); Exhibit 3, Declaration of John Mitchell.[3] Similar percentages have been deemed

---

[3] Between 71.5% and 88% of Plaintiff's time was spent abroad while on the *Carnival Magic*. *See* Exhibit A to Declaration of John Mitchell. As seen in Exhibit 3A, the *Carnival Magic* called upon ports in United States territory during parts of four days every two weeks (2 days in Port Canaveral

sufficient to establish that the relationship envisages performance abroad. *See Alberts*, 2015 12977445 at *2 (finding work was envisaged to be performed abroad because the vessel "was outside the territorial waters of the United States for approximately 78% of the time Plaintiff was onboard"); *Rutledge*, 2015 WL 458133 at *3 (80% of the work was performed abroad); *Leighton*, 2016 WL 1321417 at *4 (77% of the work was performed abroad); *Johnson*, 163 F. Supp. 3d at 360 ("more than 80%" of the work was performed abroad).

Because Plaintiff's Seafarer's Agreement envisaged work abroad, all four jurisdictional prerequisites are met, and Plaintiff can avoid arbitration only with a successful defense to contract recognized under the Convention. *See Bautista*, 396 F.3d at 1294–95 ("A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met or (2) one of the Convention's affirmative defenses applies.") (citations omitted). Plaintiff has not raised a defense that his Seafarer's Agreement is unenforceable, revocable, or invalid. *See id.* There is no allegation that the Seafarer's Agreement is "null and void, inoperative or incapable of being performed." *See Lindo*, 652 F.3d at 1276 (citing the Convention, Art. II(3), for the list of affirmative defenses). Rather, all alleged claims arise from Plaintiff's employment with Carnival, which was controlled by the Seafarer's Agreement at all times. Without any allegations that the Seafarer's Agreement can be avoided, the arbitration mandate in Paragraph (9) must be enforced at the outset of litigation. Accordingly, Carnival moves to enforce the arbitration agreement and dismiss this action.

---

or Miami and one day each in Puerto Rico and St. Thomas). Assuming *arguendo* that the vessel was in those ports for the *entirety* of those days, then the *Carnival Magic* would be abroad 71.5% of the time Plaintiff was aboard. However, the ship never spent an entire day in United States territory during that time period. The schedule shows that the *Carnival Magic* was in those ports for an approximate total of 40 hours of every two-week period, which amounts to the vessel being abroad 88% of the time (296/336 = .8809). Thus, 75–85% is a fair estimate.

CASE NO.: 1:21-CV-22301-ALTONAGA/TORRES

## **Conclusion**

Plaintiff signed a Seafarer's Agreement that mandates arbitration. That arbitration provision was in force at all times after June 23, 2018, and it covers all claims that arise out of Plaintiff's employment with Carnival as alleged in the Complaint. Arbitration must be compelled because (1) all claims arise out of Plaintiff's employment with Carnival under the Seafarer's Agreement, (2) the Seafarer's Agreement envisaged work abroad and was related to foreign states, and (3) there is no allegation that the Seafarer's Agreement is unenforceable or void.

WHEREFORE, Carnival Corporation, d/b/a Carnival Cruise Line, respectfully requests that this Court compel arbitration on all claims, dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1),[4] and grant any other relief this Court deems just and proper.

---

[4] This may be mere semantics, but Carnival alternatively moves under FRCP 12(b)(3) and FRCP 12(b)(6) for the same relief depending on which rule the Court views as the proper vehicle to compel arbitration under the Convention.

Some courts in the Southern District of Florida have used FRCP 12(b)(1) to dismiss claims after compelling arbitration. *See MRI Scan Center, LLC v. National Imaging Associates, Inc.*, No. 13-60051-CIV, 2013 WL 1899689, *2 (S.D. Fla. May 7, 2013) (Dimitrouleas, J.) (citing *Shea v. BBVA Compass Bancshares, Inc.*, No. 12-23324, 2013 WL 869526, *2 n.3 (S.D. Fla. Mar. 7, 2013) (Moore, J.)). Notably, however, the Convention expressly grants subject matter jurisdiction to district courts for the purposes of adjudicating arbitration agreements and awards under the Convention. *See* 9 U.S.C. §§ 203–207. Thus, other 12(b) rules may be more appropriate here.

At least one circuit expressly rejects Rule 12(b)(1) being the proper vehicle to compel arbitration and uses 12(b)(3). *See Grasty v. Colo. Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (citing *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014)) ("Motions to compel arbitration thus concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3), not Rule 12(b)(1).").

Yet the Third Circuit rejects both FRCP 12(b)(1) and 12(b)(3), finding that FRCP 12(b)(6) is proper. *See Palko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) ("Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted.").

CASE NO.:  1:21-CV-22301-ALTONAGA/TORRES

## LOCAL RULE 7.1 CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to S.D. Local Rule 7.1(a)(3), counsel for Defendant certifies that the undersigned conferred with Plaintiff's counsel via telephone on August 13, 2018. Plaintiff opposes the relief sought in this motion.

Dated:  August 18, 2021

Respectfully submitted,

MASE MEBANE SEITZ, P.A.
*Attorneys for Defendant*
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone:  (305) 377-3770
Facsimile:   (305) 377-0080

By: */s/ Tyler Rauh*
    CURTIS J. MASE
    Florida Bar No. 478083
    cmase@maselaw.com
    TYLER J. RAUH
    Florida Bar No. 1023404
    trauh@maselaw.com