# SEAFARER'S AGREEMENT
## CARNIVAL CRUISE LINE

**The Application having been submitted by the Seafarer named below to Carnival Cruise Line, a division of Carnival Corporation ("CCL") with its principal place of business located at 3655 NW 87th Avenue, Miami, Florida 33178, and CCL having considered said Application, this Seafarer's Agreement (the "Agreement") is hereby entered by and between CCL and Seafarer, pursuant to the terms and conditions set forth below. Any other arrangements, agreements, or understandings regarding terms of employment are hereby canceled and superseded, and no amendment or exceptions to this provision are valid. Seafarer shall not rely upon any statements or representations, whether orally or in writing, contrary to the Seafarer's Agreement concerning wages, tips, and other terms and conditions of service.**

1. The Seafarer, _____, CREW # __249109__, born __05-APR-72__ in __BRONX, NY__, agrees to work in the tipping [ ] non-tipping [ X ] position of __CRUISE DIRECTOR__ aboard any assigned vessel operated by CCL or any of its affiliated companies, regardless of the class or location of the assigned vessel. Once a Seafarer has been assigned to a vessel, he or she remains assigned to that vessel only, unless and until reassigned to a different vessel at CCL's sole discretion. CCL reserves the right to change the Seafarer's assigned vessel at any time without prior notice. *From time to time as the operational and administrative needs of CCL may require, Seafarer may be placed in a different position than stated in an employment letter or in Seafarer's Agreement until such time as the indicated position is available on the vessel. Seafarer's wages will be paid commensurate with the level of the assigned position not the expected position. CCL will attempt to place Seafarer in the expected position onboard the vessel within a period of time not to exceed four weeks from the date Seafarer signs on board the vessel with no additional compensation. If CCL is not able to place the Seafarer in the expected position within a four week period, CCL shall offer Seafarer a vessel transfer in the expected position or the opportunity to terminate this Agreement. If the Seafarer elects to terminate the contract under this Article, CCL shall bear the expense of return air travel.*

1(a). The italicized portion of paragraph 1 above will not apply to Production Staff or Musicians.

2. This Seafarer's Agreement shall be effective upon the Seafarer's reporting to work on an assigned vessel in navigation. The parties agree that the employment relations between them shall be governed by the terms of this Agreement commencing on the date the Seafarer first signs onboard the assigned vessel after signing this Agreement and continuing for a period of time as indicated in Annex 1 of this Agreement. Employer reserves the right to reduce or extend Seafarer's tour of service for up to two (2) months to meet operational or vessel positioning requirements. This Agreement shall automatically terminate without notice immediately upon Seafarer's unscheduled disembarkation of the assigned vessel if Seafarer disembarks the vessel for any reason, including but not limited to unscheduled personal leave, illness or injury, for more than one full voyage. This Agreement shall also terminate without notice immediately upon Seafarer being unfit or unable to serve in his or her stated position at the commencement of a new voyage. If the Seafarer remains on the assigned vessel after the commencement of a new voyage, he or she would do so as an invitee and would no longer be considered a member of the vessel's crew. Seafarer's status as a member of the crew would not resume until the Seafarer actually returns to serving in his or her stated position. This Agreement shall be deemed terminated upon achievement by the Seafarer of the age of 67 years. The minimum written notice to be provided by either the Seafarer or CCL for the early termination of this Agreement is fifteen (15) days; except shorter written notice may be provided for valid reasons based on compassionate grounds; any serious breach of conditions of employment; or any serious breach of CCL's Code of Conduct as determined by CCL.

3.A. Seafarer's right to receive any wages is conditioned upon his or her actual signing on as a member of the assigned vessel's crew and serving in his or her stated position while the vessel is in navigation. In the case of seafarers assigned to the Carnival Studio facility, the right to receive the training rate and per diem rate stated in paragraph **3C.(iv)** is conditioned upon signing onto the facility.

3.B. A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked, for a total work week of 70 hours. The Seafarer shall also be paid vacation pay at the rate of one day per eleven days worked as well as a holiday pay at a rate equal to 11 days of the seafarer's basic wage and regular overtime. For Seafarer's with a basic daily wage less than $__11.54__ this will be calculated at $__11.5385__. Seafarers will have records of their pay and payments transactions available to them at the Paymaster office should they choose to retrieve it. Records will be available for each pay period.

3. C. (i) **Non-Tipping Personnel ONLY.** Seafarer shall be paid the wage of $__300.4292__ USD for each day of work, which shall include the Seafarer's basic wage of $__300.4292__ USD, regular overtime and ASP of $__0.0000__ USD (Alternative Services Pay) if applicable, based on seafarer's position. This daily rate translates to a monthly wage of $__9,113.02__ USD. Seafarer agrees that extra overtime is time worked in excess of 70 hours per week according to CCL's records. Seafarer shall be paid $__0.0000__ USD per hour for extra overtime worked provided, however, that payment for extra overtime worked shall not apply to (i) any seafarer who receives gratuities or tips, bonus payments, special event and discretionary payments which will be received by seafarer as a substitute for and in lieu of, extra overtime wages or (ii) any seafarer working in a management or Department Head capacity. It is understood and agreed that Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of CCL, on an "as needed" basis.

(ii) **Australia ONLY (Housekeeping and Restaurant Personnel).** Each seafarer serving on a ship that is home-ported in Australia either seasonally or year around during their service, and who are serving in positions traditionally designated as gratuity-earning by CCL, will be paid wages equal to the total average wages paid, inclusive of gratuities, to all seafarers of the same rating across the fleet of Carnival Cruise Line vessels during the twelve (12) month period immediately preceding  payment ; provided that Seafarer shall receive a minimum  monthly consolidated  wage  of no less  than $__N/A__ USD. The 12 month fleet average will be calculated quarterly. The minimum monthly consolidated wage consists of a basic wage of $__N/A__ USD per day and all regular and extra overtime. Any excess payment above the minimum monthly consolidated wage amount, if any, will depend exclusively on the calculation derived from the above formula. The wage formula will only apply during such time as the ship is home ported in Australia.

**(iii) Australia ONLY (Bar Staff).** Each seafarer serving on a ship that is home-ported in Australia either seasonally or year around during their service, and who are serving in positions traditionally designated as gratuity-earning by CCL, will be paid a minimum consolidated monthly of $ __N/A__ USD which shall include the Seafarer's basic wage of $ __N/A__ USD which includes all regular and extra overtime. If Seafarer is employed in an eligible position within the bar staff, he/she may receive discretionary performance payments in the form of "Bar Position Pay Levels". The eligibility, timing, and amounts (if any) of the Bar position pay Level payments shall be determined by CCL in its sole discretion. Any additional amount received over the basic wage and minimum monthly amount is not guaranteed. This paragraph will only apply during such time as the ship is home ported in Australia.

**(iv) Carnival Studio ONLY.** All seafarers training at Carnival Studios shall be provided a $ __25__ per diem for each day assigned to Carnival Studio, and shall also be provided housing at CCL's expense.

**(a) Production Staff and Musicians.** While assigned to training at Carnival Studio the position of __N/A__ shall be paid a training rate of $ __N/A__ per day.

**(b) Entertainment Technicians.** While assigned to training at Carnival Studio shall be paid a consolidated training rate of $ __N/A__ per day. This consolidated training rate shall include wages for 40 hours regular hours and up to 16 hours overtime. Technicians will be paid $ __12.25__ for any hour(s) worked over 56 hours as determined by CCL's records.

**3.D.   Tipping Personnel ONLY (excluding Bar Staff).** Seafarer shall be paid a basic wage of $ __N/A__ USD for each day of work. Seafarer shall also be entitled to receive a minimum monthly amount of $ __N/A__ from the gratuity based compensation program administered by CCL calculated over the term of the contract period (meaning that the actual monthly amount may be lower or higher during the contract period but will, on average, be no less than the specified monthly amount during the contract period). Any additional amount received over the basic wage and minimum monthly amount is not guaranteed, is solely a distribution of the gratuities delivered by passengers to Carnival, and is not a personal wage.

**3.E.   Bar Staff ONLY.** Seafarer shall be paid a basic wage of $ __N/A__ USD for each day of work. Seafarer shall also be entitled to receive a minimum monthly amount of $ __N/A__ from the gratuity based compensation program administered by CCL calculated over the term of the contract period (meaning that the actual monthly amount may be lower or higher during the contract period but will, on average, be no less than the specified monthly amount during the contract period). As part of this gratuity based compensation program, if Seafarer is employed in an eligible position within the Bar Staff, he/she may receive discretionary performance payments in the form of "Bar Position Pay Levels" (paid from the gratuities assessed for Bar services) and a "Bar Stipend" (to account for certain ship itineraries or deployments which underperform compared to the average level of passenger gratuities collected across the fleet). The eligibility, timing, and amounts (if any) of the Bar Position Pay Level and the "Bar Stipend" payments shall be determined by CCL in its sole discretion. Any additional amount received over the basic wage and minimum monthly amount is not guaranteed, is solely a distribution of the gratuities delivered by passengers to Carnival, and is not a personal wage

**3.F.**   The compensation paid to Seafarer under Subparagraphs 3.C., 3.D. or 3.E. shall be received by Seafarer as a substitute for and in lieu of, any overtime wages. Seafarer agrees and acknowledges that the gratuity based compensation program is administered by CCL in its sole discretion and that subject to the payment of the minimum monthly amount set forth in Subparagraphs 3.D. or 3.E. (as applicable), CCL may distribute monies collected under the program in CCL's sole discretion (including the amount, timing and form of payment) to any seafarer who CCL designates as being eligble to participate in the program including seafarers who receive ASP or bonus payments funded from the program. Eligbility of Seafarer to participate within the gratuity program (including seafarers' eligibility to receive ASP or bonus payments funded from such program) and the level of participation are subject to change from time to time based on CCL discretion.  Seafarer further acknowledges and agrees that the gratuity based compensation program is funded through a voluntary contribution by each passenger for the benefit of a broad group of eligible seafarers as designated by CCL from time to time. Passengers are not obligated to make a contribution or to adhere to CCL's suggested guidelines for such a contrbution. Nonetheless, to the extent passengers follow the suggested contribution guidelines in whole or in part, and deliver their contribution to CCL, Seafarer agrees that any such contrbution is not his or her personal wage, but rather a contribution to the overall gratuity based compensation program administered by CCL. CCL shall distribute the funds contributed by the passengers to eligible seafarers less credit card transaction fees (to be paid from such funds in CCL's sole discretion). Seafarer agrees that CCL reserves and has the exclusive right to determine, in its sole discretion, the eligbility and number of total crew members entitled to share in the gratuity based compensation program (including those eligible to receive ASP or bonus payments funded from the program) and to set each seafarers' distribution of the funds in the program subject only to the monthly minimum compensation set forth in Subparagraphs 3.C., 3.D or 3.E., as applicable.

**3.G.**   In the event Seafarer believes he or she has worked more hours than documented on Seafarer's or CCL's time records, or that any earned wages of any type are due and owing, Seafarer must comply with the CCL's Wage Grievance Policy and Procedure attached as Annex 2, including the requirement for mandatory binding and final arbitration of all claims for wages of any type. Seafarer hereby requests, consents to and authorizes CCL to arrange for, in CCL's sole discretion, payment of wages by cash, check, negotiable instrument, wire transfer, direct deposit, pay card or any other commercially available method for the efficient, practical and prompt payment of wages earned during the Seafarer's employment. In consideration for his/her employment, the Seafarer's request, consent and authorization extends to, without limitation, deposit of wages into an account to secure a payroll, debit or stored value card, or any other account for the benefit of the Seafarer, as may be arranged by CCL from time to time.

**3.H.**   In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing, during an unscheduled extended voyage where gratuities are not collected from guests or while involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid at the rate of $ __N/A__ USD for each day of work. In the event the wage outlined in this subparagraph is paid, all provisions of subparagraph 3.B above, except those contained in the first and second sentences, will still apply with force and effect.

3.I.     Seafarer acknowledges and agrees that where sickness or injury results in incapacity to work on board the vessel, he/she shall be paid a partial wage at the rate of $ __18.9566__ USD per day (equivalent to $ 575 /month) as sick pay.  Such partial wage shall be paid from the day of disembarkation due to sickness or injury until the day of recovery, but for no longer than 16 weeks from the commencement of the sickness or injury. Seafarer shall not be entitled to participate in the CCL gratuity compensation program, ASP or any other bonus program while receiving sick pay.  In the event Seafarer is signed off duty due to illness or injury, CCL reserves the right to provide medical treatment aboard its vessel or ashore in either the vessel's home port, a regular port of call, in Seafarer's home nation, or any other location where Carnival is able to provide adequate medical care, at CCL's sole option, notwithstanding the automatic termination of this Agreement in such circumstances. Seafarer shall be entitled to receive board and lodging while receiving medical care away from home subject to and in accordance with CCL policies.

3.J.     In addition to the medical care and partial wage benefit described in paragraph 3.I. above, the following benefit programs are offered to Seafarers subject to eligibility requirements and the specific terms and conditions of such programs: (1) retirement benefit; (2) death benefit; (3) smoking cessation program; (4) hypertension/diabetes screening; (5) board and lodging while receiving medical care away from home; (6) pregnancy and pre-natal care; and (7) Seafarer's family cruise benefits as detailed in the Seafarer's Manual and Team Carnival Handbook.

3.K.     In the event Seafarer returns to work after this Agreement has automatically terminated pursuant to paragraph 2, then Seafarer's return to active duty shall be deemed to be the commencement of a new and separate Seafarer's Agreement under the same terms and conditions set forth herein and said terms will be in force and effect until such time as a new Seafarer's Agreement is executed.

3.L.     The parties acknowledge and agree that should the assigned vessel be under construction at a shipyard and until the vessel starts navigation, Seafarer may be required to work on "comandata" regime on board of such vessel for all the duration of the construction operations or for a different term as indicated by CCL from time to time. During the "comandata" regime period, Seafarer shall perform his/her shipboard duty with the aim of familiarizing with the vessel's facilities and organization. For all the duration of the "comandata" regime, Seafarer will be subject to the same terms and conditions of employment provided in this Agreement. If the Seafarer's scheduled work assignment falls during a wet dock or dry dock, Seafarer may be signed off the assigned vessel prior to said wet dock/dry dock and, if so, will not be under CCL's employ during said periods of time. If the Seafarer remains on the vessel during said periods, he/she does so either as a business invitee or under the "comandata" regime as specified above until the vessel is returned to navigation.

4.     Seafarer acknowledges that as a Seafarer he/she is required at all times to comply with and abide by the assigned vessel's rules and regulations; the Team Carnival Handbook, as well as all other oral and written rules, regulations and standards of CCL and/or of the operator of the assigned vessel and/or of the ship's command for the assigned vessel. Any violation of any such rules, regulations, policies, procedures and/or standards may result in disciplinary action, up to and including automatic termination. This Agreement in no way diminishes or modifies the Seafarer's independent duties as a Seafarer to comply with any such rules, regulations, policies, procedures and/or standards.  Seafarer shall have the right to lodge an on board complaint of a non-wage nature in accordance with Annex 3.

5.     **Repatriation.** Seafarer shall be repatriated by CCL to Seafarer's country of residence as recorded by CCL in its Crew Personnel System. Seafarer shall be liable for his or her own repatriation expenses in the event he or she has been found to be in material default of this Agreement. In case of ship's loss or foundering, resulting in the termination of this Agreement, Seafarer shall receive a repatriation ticket and adequate compensation, from the date the Seafarer remains unemployed, at a rate equal to the wages payable under this Agreement, but limited to up to three months wages.

6.     At the completion of the contract Seafarers will receive a record of employment in the format and type approved by the Administration.

7.      This Seafarer's Agreement constitutes the sole and entire employment agreement of the parties. There are no prior or present agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Seafarer's Agreement. No modification or change of this Seafarer's Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it. This Seafarer's Agreement shall be retained by the Company for a period of 7 years.

8.     **Commercial Legal Relationship.** Seafarer and CCL acknowledge and agree that Seafarer's employment with CCL constitutes a commercial legal relationship between the parties.

9.     **Arbitration.  Except for a wage dispute governed by CCL's Wage Grievance Policy and Procedure, any and all disputes, arising out of or in connection with this Agreement or Seafarer's service on the vessel, no matter how described, pleaded, or styled including but not limited to constitutional, statutory, common law, admiralty, personal injury, intentional tort, contract, equitable claims, claims of injury, medical and lodging benefits claims, inadequacy or improper care claims, or employment disputes, whether accruing prior to, during or after the execution of this Agreement, shall be resolved by final and binding arbitration on an individual basis. In addition, Seafarer agrees to arbitrate on an individual basis any and all disputes regarding the existence, validity, termination or enforceability of any term or provision in this Agreement, including but not limited to this provision to arbitrate. All Arbitration between the parties shall be referred to and finally administered and resolved by National Arbitration and Mediation (NAM) under its Comprehensive Dispute Resolution Rules and Procedures as adapted for Seafarer/Crew-Member Employment Arbitrations and fee schedule (which may be amended from time to time) in effect at the time of initiating a proceeding with NAM, which Rules, as amended, are deemed to be incorporated by reference to this Agreement.** The number of arbitrators shall be one. The seat of the arbitration and the final hearing shall be either in London, England, Monaco, Panama City, Panama or Manila, Philippines whichever is closer to Seafarer's home country. The Arbitrator shall be either a member of the Bar of the location determined to be the seat of the arbitration proceeding or of the applicable flag-state as determined in paragraph 10 of this Agreement. The Seafarer and CCL must arbitrate in the designated jurisdiction, to the exclusion of all other jurisdictions. The language of the arbitral proceedings shall be English. Each party shall bear its own attorney's fees and costs associated with maintaining an action in arbitration, including, but not limited to, travel, lodging, expert(s) and court reporter(s) fees and costs, regardless of any rules or laws to the contrary. CCL shall only pay for the administrative costs of arbitration and fees of the arbitrator as assessed by NAM. The Parties agree to the exchange of information as required by NAM's procedures, as amended. At CCL's request, Seafarer agrees to appear at his expense for medical examinations by doctors designated by CCL in specialties relevant to any claims Seafarer asserts. Otherwise the parties agree to waive any and all rights to compel information from each other. The parties agree that there shall be no award of pre-judgment interest or injunctive relief in any arbitration proceeding between the Seafarer and CCL.

10. **Governing Law.** The substantive law that governs this Agreement, Seafarer's employment, and Seafarer's and CCL's relationship, which is to be applied to the arbitration of any and all claims whatsoever, no matter how described, pleaded, or styled, shall be that of the laws of the flag state of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder except for any and all claims arising aboard the Carnival Spirit and Carnival Legend, which shall be governed by Bahamian law without regard to the law of the flag of that vessel or principles of conflicts of law. The parties agree to this governing law notwithstanding any and all claims, no matter how described, pleaded, or styled which might be available under the laws of any other jurisdiction.

11. **Limitation of Claims.** Any action or arbitration to recover on any claim whatsoever, no matter how described, pleaded, or styled shall not be maintainable by Seafarer unless initiated within three years from the date of the incident underlying the claim. Seafarer expressly waives all other potentially applicable limitations period for initiating claims.

12. **Class Action Waiver.** This Agreement provides for the exclusive resolution of disputes on Seafarer's own behalf instead of through any class action. Even if the applicable law provides otherwise, Seafarer agrees that any claim whatsoever shall be arbitrated by Seafarer individually and not as a member of any class or as a part of a class action, and Seafarer expressly agrees to waive any law entitling Seafarer to participate in a class action. The arbitrator shall have no authority to arbitrate claims on a class action basis. If for any reason, the arbitration provision is unenforceable, this Class Action Waiver shall apply with equal force to any legal action for any and all disputes, arising out of or in connection with this Agreement or Seafarer's service on the vessel.

13. **Confidentiality.** Seafarer and CCL hereby agree that all information disclosed in connection with arbitration shall not be made public or disseminated by any means. Unless otherwise agreed by the parties in writing, or required by applicable law, the parties, members of the tribunal and the administrator shall keep confidential all matters relating to the arbitration or award. Any party who discloses information in violation of this provision shall be subject to sanctions, including but not limited to vacating the arbitration award, monetary sanctions, and imposition of attorney's fees and costs.

14. **Survival Clause.** The parties' agreement to arbitrate shall survive the termination of the Seafarer's Agreement and shall continue to apply in full force and effect and bind the parties as required herein.

15. Seafarer hereby authorizes CCL and its designated agents and representatives to conduct a review of my background for the purpose of verifying my eligibility for employment. Such review may cause a consumer report and/or an investigative consumer report to be generated. I further authorize any individual, company, firm, corporation, or public agency to divulge any and all information, verbal or written, pertaining to me to Carnival Cruise Line or its agents. I further authorize the complete release of any records or data pertaining to me which the individual, company, firm, corporation, or public agency may have, to include information or data received from other sources. Seafarer hereby releases CCL, its agents, officials, representatives, or assigned agencies, including officers, employees, or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may, result from the review authorized herein.

16. Seafarer hereby acknowledges and agrees that in connection with his or her duties the Seafarer will or may be exposed to second hand tobacco smoke. Seafarer acknowledges and agrees that CCL cannot guarantee that Seafarer will not be exposed to second hand smoke while onboard the vessel. Seafarer agrees not to enter into this contract if exposure to second hand smoke would cause Seafarer to have any health or other concerns.

17. **Severability.** If any provision, term, or condition of this Agreement is invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining provisions, terms, and conditions of this Agreement shall not be affected thereby and shall remain in full force and effect.

18. Seafarer acknowledges he or she had the opportunity and ample time to read and consider this Agreement before entering into such Agreement. Seafarer further acknowledges he or she had an opportunity to seek advice on the terms of this Agreement before entering into the Agreement.

The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. It is agreed by and between Seafarer and Carnival that the parties entered freely into this Agreement. It is further agreed by the parties that the language of the Agreement cannot be construed against the drafter because it represents the parties' mutual and bargained for terms and conditions for Seafarer's employment. The Seafarer acknowledges his/her separate and independent duty to abide by all other oral and written rules, regulations and standards of CCL and/or the vessel's operator and/or the ship's command.

In consideration for the offer of employment made herein, Seafarer accepts each and every term and condition of this Agreement, including but not limited to the at will nature of the employment and the provisions and limitations of paragraphs 2 and 3 and the arbitration/choice of law provisions in paragraphs 9 and 10. Seafarer acknowledges that CCL would not have entered into this Seafarer's Agreement or otherwise employed Seafarer if Seafarer had not agreed to all such terms and conditions. Thus, the application for employment having been accepted by CCL and the terms and conditions of employment having been agreed by and between both the Seafarer and CCL, the undersigned hereby enters into this Seafarer's Agreement this __23rd__ day of __June__, __2018__, on __CARNIVAL MAGIC__.

By: _____  
**Seafarer's Signature**

_____/249109  
Print Name/Crew I.D. Number

By: _____  
**CCL Human Resources Representative**

MATJAZ STRNAD/444989  
Print Name/Crew I.D. Number

**Seafarer's Agreement**

**ANNEX 1**

**Length of Contract in Months**

| | |
|---|---|
| Hotel Tipping Positions | 7 |
| Hotel Non Tipping Positions | 8 |
| Deck and Engine Petty Officers | 5 |
| Deck and Engine Ratings | 6 |

## ANNEX 2

WAGE GRIEVANCE POLICY AND PROCEDURE

Carnival's priority is to conduct business in a way that avoids wage disputes with its Seafarers. Carnival, however, recognizes that disputes may still develop and has designed a wage grievance policy to address them.

    **A.**    **Persons Covered Under Grievance Policy**

Carnival's wage grievance policy applies to all Seafarers. The grievance policy does not apply to contractual consultants/concessionaires. Any wage claim by any Seafarer under law or contract must be brought under this policy as consideration for new or continued employment.

    **B.**    **What is a Wage Grievance?**

A Wage Grievance is any dispute or complaint that a Seafarer may have relating to his or her wages including but not limited to a claim that Carnival has failed to pay adequate wages of any type. However, a Wage Grievance does not include any personal injury, death, Jones Act unseaworthiness, and/or maintenance and/or cure claims or any wage claims for back pay coupled with or asserted along with such personal injury, death, Jones Act, unseaworthiness, and/or maintenance and/or cure claims. A wage grievance does not include claims for benefits, including any claim for medical or partial wage benefit. Those claims are governed by the Arbitration provision and procedure in your Seafarer's Agreement.

    **C.**    **Wage Grievance Procedures**

In order to be heard on a particular Wage Grievance, the Seafarer must follow the following steps:

Provided that the Seafarer has access to Fun Time or other comparable pay records, within sixty (60) days of the date on which the Seafarer receives his or her paycheck, the Seafarer must submit a Grievance Form (available at the Paymaster's office) to the Ship's Paymaster. The Paymaster will review the Grievance Form and forward a copy to the Shipboard Department Head or his designee. The Seafarer can also present witnesses and evidence in any form, including written statements, as can any other party to the grievance. The Grievance Form may be submitted in person, by mail, e-mail, fax or in any other convenient manner, so long as there is a record of delivery to the Paymaster.

Within five (5) to thirty (30) business days from receipt of a Grievance Form, Carnival will (1) respond to the grievance in writing, or (2) obtain acknowledgement from the Seafarer that the matter has been resolved. The ruling by Carnival will be final and binding on the parties, subject only to an arbitration process.

    **D.**    **Arbitration Process**

(1) If the Seafarer does not agree with the decision reached by Carnival, he must dispute the decision and request arbitration. He can do so by sending written notice to the Legal Department of his claim and requesting arbitration. This written notice must be sent within thirty (30) days of exhausting the grievance policy. If the Seafarer does not meet the thirty (30) day time limit, then he cannot arbitrate his claim and Carnival's decision on his claim shall be final and binding on the Seafarer.

(2) If a request for arbitration is received, then the Legal Department will acknowledge the date in which the request for arbitration was received and will submit an acknowledged copy of the request for arbitration to the Seafarer within ten (10) days after receiving the arbitration request from the Seafarer.

(3) Once a timely arbitration request has been made, the Legal Department will submit the matter to an independent arbitrator in writing. The independent arbitrator will then advise the parties of the arbitration process. There will be one arbitrator. The place of arbitration will be London, England, Panama City, Panama, Manila, Philippines, Miami, Florida or Los Angeles, California, to the exclusion of all others. The Seafarer can appear telephonically or submit written testimony or argument in writing without physically appearing at the location. The parties will use their best efforts to reasonable accommodate the Seafarer's schedule during arbitration. The language of the arbitral proceedings shall be English, but translation services shall be made available at the Seafarer's request. Each party shall bear its own attorneys' fees. The Seafarer shall be required to pay a $ 25 fee or 10% of the outstanding disputed claim, whichever is less, as an arbitration fee.

(4) At the conclusion of the arbitration the result will be binding and final on both Carnival and the Seafarer. Any arbitration under this provision shall be governed by, and all disputes arising under or in connection with the arbitration or Seafarer's service on the vessel shall be resolved in accordance with the law of the flag of the vessel on which Seafarer is assigned at the time the claim accrues, without regard to principles of conflicts of laws thereunder; but the procedures followed in the arbitration shall be those provided by the Arbitration Rules of the International Chamber of Commerce.

(5) The arbitration remedies are the sole and exclusive remedy for a Wage Grievance and each Seafarer waives any right to bring or participate in any class action, group action, collective action, individual action, Seaman's Wage Act penalty claim or other litigation or claim against Carnival for a Wage Grievance.

(6) Carnival will not retaliate against any Seafarer for filing a Wage Grievance or pursuing it in arbitration.

(7) The Seafarer agrees that acceptance of wages and a pay stub or wage statement for a specified pay period is notice that Carnival contends it has paid the Seafarer all wages or other consideration due under contract or law through the last date of the specified period and releases Carnival from any claim for failure to pay adequate wages during the pay period stated in the pay stub or wage statement, unless the Seafarer follows the process set forth above.

(8) Any portion of this Wage Grievance Policy and Procedure statement that is invalid will be severed and the remainder of this policy and procedure will remain valid.

ANNEX 3

**OBJECTIVE**
To comply with the requirements of the Maritime Labour Convention 2006 as required by Flag State.

**SCOPE**
For seafarer complaints alleging breaches of the requirements of the Maritime Labour Convention 2006 (including seafarers' rights).

**REQUIREMENTS**

1.0   **General**

1.1   Any eligible seafarer on board a Carnival Cruise Line vessel shall have the right to lodge a complaint and to have that complaint investigated, provided it is specific in nature and is alleged to constitute a breach of seafarers' rights under the Maritime Labor Convention 2006, or applicable internal procedures.

1.2   Any victimization against a seafarer for filing a complaint is strictly prohibited. Victimization is understood to mean any adverse action taken or threatened by any person with respect to a seafarer for lodging a complaint which is not manifestly vexatious or maliciously made.

1.3   The ship's HR Director has been designated as the person that will provide seafarers with impartial advice on their complaint and assistance with the complaint processing procedures on board the vessel. The Training & Development Manager will substitute in the absence of the HR Director.

1.4   A seafarer's right to arbitration of non-wage disputes as set forth in the Seafarer's Agreement shall not be prejudiced by on board grievance procedures.  Arbitration of wage disputes is governed by Annex 2.

2.0   **Complaint Procedures**

2.1   Notwithstanding procedures laid down in an individual seafarer's contract of employment, the following procedures shall be observed.

2.2   Any seafarer with a complaint shall have the ability to have the matter addressed by bringing it to the attention of the proper authority on board, as provided below:

- Seafarer's Supervising Officer
- Shipboard HR Director (where available)
- Ship's Paymaster (for wage grievance procedures)
- Master

Seafarer shall have the right to be accompanied and to be represented by another seafarer of his/her choice, on board the ship concerned.

2.3   Complaints shall be sought to be resolved at the lowest level possible; and only when the matter cannot be resolved to the satisfaction of both parties, should it be elevated to the next level.

2.4   Officers and/or crew members shall, within fifteen (15) days from the date of the alleged occurrence of a non-wage grievance, bring the matter to their, Supervising Officer, Shipboard HR Director, Master or his or her appointee, who each in the chain of command dealing with the grievance shall have a further five (5) days to bring about a solution to the matter through conciliation, provided that this time limit is appropriate to the seriousness of the matter.

2.5   For wage disputes, seafarers employed by Carnival Cruise Line shall submit a Grievance Form to the Ship's Paymaster within sixty (60) days from which seafarer receives his or her paycheck in accordance with the procedures set forth in Annex 2. Carnival's Wage Grievance Policy and Procedure does not apply to persons not employed by Carnival Cruise Line, such as, but not limited to, persons or seafarers working as or for contractual consultants, concessionaires, independent contractors, or other entities.  Such non-employees must submit any such wage disputes to their employer.

2.6   Notwithstanding, in all cases, seafarers shall have the right to complain directly to the Master and, where they consider it necessary, to the Company Shipboard Human Resources Department for conciliation.

2.7   Should a complaint reach the level of the Master, the Master shall:

1. Conduct an investigation or inquiry in cooperation with the ship's HR Director, as appropriate;
2. Reference the terms and conditions of employment; and
3. Seek the advice of the Company's Director HR Shipboard Operations.

2.8   If the Master cannot reconcile the complaint, the non-wage matter should be formally referred to the Company's Headquarters, in the person of Director HR Shipboard Operations, who must conciliate the matter in accordance with the terms and conditions of employment within 8 days thereafter. For wage disputes, seafarer must dispute the decision by sending written notice to the Company's Legal Department and request arbitration as set forth in Annex 2.

2.9   If a non-wage matter is to the prejudice of the Master, then a seafarer may present his/her case directly to the Company, in the person of the Director HR Shipboard Operations or his/her appointee. Until such time as the Company's decision is received on the non-wage matter, the Master's decision shall be binding on all parties.

3.0   **External Authorities**

3.1   Seafarers shall have the right to file a complaint directly to an appropriate external authority, such as, but not limited to:

- a Flag Administration (see Attachment 1 for more information);
- a Flag Administration Inspector;
- a Port State control official;

3.2   Should a complaint reach the level of external authorities, other than Flag, that authority shall be provided with the contact information for the Maritime Administration and shall be requested to communicate the complaint to them.

3.3   The Maritime Administration shall communicate the complaint to the Company who shall then be expected to resolve the matter in accordance with the terms and conditions of employment to the satisfaction of both parties.

**4.0   Record Keeping**

4.1   Any record pertaining to filed grievance issues must be retained by the shore side office for a minimum of 5 years.

4.2   In all cases, a written report has to be completed on board and sent to the Company. The report shall list the details of the complaint, the action taken, and the decisions agreed. A copy of the report will be given to the Seafarer involved, along with a copy of the Seafarer's complete employment agreement. Appropriate entries in the ship's official log book must also be made.

**Carnival Cruise Line**

**Seafarer's Agreement**

**Attachment 1**

**Flag State Competent Authority**

1. Registrar General of Shipping and Seamen
   Merchant Shipping Directorate
   Authority for Transport in Malta
   Transport Center
   Marsa
   mlc.tm@transport.gov.mt

2. Panama Maritime Authority
   Directorate General of Merchant Marine
   mlcsegumar@amp.gob.pa
   mlc@segumar.com

3. Bahamas Competent Authority:
   Director of Labour
   c/o The Bahamas Maritime Authority
   Shirlaw Street, P.O. Box n-4679
   Nassau, Bahamas
   e-mail stcw@bahamasmaritime.com

4. Contact information for the competent Authority of seafarer's home state
   If different than the flag state of the vessel is available upon request at the HRD's office.